Is counsel for petitioner there and ready to proceed? Yes, your honor. It's Alex Siegel for petitioner. Very good. And for the government? Yes, your honor. Lisa Arnold for the respondent. Excellent. The petitioner may proceed. Thank you, your honors. May it please the court. I'd like to argue three points on this case. The first of which is the acts that the petitioners described in their hearings do constitute persecution, raising a rebuttable presumption of persecution. Secondly, that there is in fact a nexus between the respondent's nationality and religion and the five enumerated grounds for granting a political asylum. And thirdly, in that the acts contained in the record were trivialized by the immigration judge and given less weight than they actually were. The acts that occurred to the petitioners were some pretty serious acts that put petitioner's life in jeopardy and continue to put petitioner's life in jeopardy should they return to Uzbekistan. Counsel, this is Judge Kleinfeld. I have questions in two areas for you. Yes, your honor. One is, although let's assume for purposes of discussion that there's a rebuttable presumption, I wonder why there isn't substantial evidence on the record as a whole that it was rebutted because the Artiunians kept going back to Uzbekistan even after these nasty situations with the police and the jail. If you ask a person, are you afraid to go back there, he says, yes, I'm afraid to go back. And he goes back. The fact that he goes back speaks louder than his words that he's afraid to. And the only reason they gave is, well, we wanted to see a Jewish doctor there. Gee, you can find Jewish doctors about any place in the world. You can find Jewish doctors any place in the world. However, there's not too many places in the world where at this point in their lives, the Artiunians could have received medical benefits. A lot of times people go back to the countries where they've heard persecution because they have no choice because their whole family is there, because this is where they live. This is where they know this is home, even though As I remember, if somebody without money walks into an emergency room here, or, well, once it actually happened to me in England, they take care of you and they don't bill you. That is the case, Your Honor. I'm not aware if the Artiunians knew that that was the case. They just knew that they needed medical care and they needed to go home to where their family was. It wasn't that they didn't fear persecution. It was that they needed to get healthy. They needed to go back to Uzbekistan to find a Jewish doctor who'd treat them within their means? That's what they decided to do. They went home. When a person is sick, they just went home, and only one of them went home. Only the male petitioner, Raphael, went home for that reason. But he was the guy who'd been in prison. He was the guy who'd been so mistreated. Absolutely, Your Honor. But the entire time he was keeping his family, and his family still is not living out in the open because they fear persecution. Okay. Let me ask you the other question now. Yes, Your Honor. When I read the country report, it looked to me as though Armenians were undoubtedly badly treated, and this fellow was badly treated, and the people who treated him badly had bad feelings toward Armenians. But it sounded like in Uzbekistan, everybody is badly treated. Just an awful government, awful police, awful jails, and I couldn't see where there was any difference for Armenians and anyone else who had the misfortune of being in that dictatorship. Well, yes, country conditions in Uzbekistan are atrocious. People who are not part of the majority are singled out for persecution. It sounded like the Uzbeks also get, what do they get, a boiled alive or something? Well, I mean, there is all sorts of mistreatment. There's all sorts of human rights violations. There's two things that is going on in Uzbekistan. The first is the government It sounded like they caught this guy for currency violation. Anyone with any sense in a country with a phony currency regime trades on the black market,  and when they get thrown in jail in a country like that, they get treated very badly. I couldn't see where it had to do with his being Armenian. Well, he was treated badly because he was Armenian. Had he been a Uzbek national, I don't think he would have had these problems. And the petitioner testified as to that. Does the country report support that? Had he been an Uzbek, that this was just a reason for the government to take him in, to allow his Uzbek landlord to take over a shop that he had just spent thousands of dollars remodeling and making nice. I mean, this is basically what it was. The Uzbek government can do anything they want to him because he's Armenian. And that is where the nexus comes in. Yes, other people in Uzbekistan get mistreated, but people who are not Uzbek nationals get singled out even more so. The acts that occurred with the petitioners constitute persecution to the greatest extent, and merely because they had days in their lives in Uzbekistan that were okay does not mean that they were not persecuted. You never know when persecution could occur. You never know whether or not when you wake up in the morning, whether or not you're going to get a visit from the Uzbek police and spend a few days in custody being mistreated or not. And this is the point, that the Artunians fear going back because they don't know when the next time, they don't know whether or not the next day could be their last. And that is why they fear persecution. And that is why there is a nexus, because this mistreatment is not because of any reason other than the fact that they are Armenian. The immigration judge made no finding as to credibility, thus we have to take the testimony for what it is, and that's truthful, and they themselves testified that this is because they're Armenian. Who better to say that the acts that they complained of are because they're Armenian than the people that were there? Is she, is the wife Armenian also? Yes, I believe so, Your Honor. Counsel, this is Judge Bea. I'm puzzled by your claim that they can't go back to Uzbekistan as a country. They may not be able to go back to his hometown because of the persecution that's perceived there, but he can go to the town where his sister lives. That's where he went to get treatment. Doesn't that make a difference? Well, it's widespread throughout the country. The reason he was singled out in his particular hometown is because people knew who he was. But if he were to go and establish himself in another city in Uzbekistan, then he would run into the same exact problem. Well, that's a little bit speculative, isn't it? I mean, one thing is the evidence. The evidence is he went back to the town where his sister lives, and he was not persecuted there. So why do you say that if he established himself in that town, he would be persecuted? Well, Your Honor, he went back to his sister's house and hid out. People didn't know he was there. He was in hiding, and that's why he was okay for the time being. He will still need to get a job. He will still need to make money. He will still need to provide for his family, and that will cause him that problem. What is there? This is Judge Fodor. What is there that singles him out from anyone else who is Armenian in Uzbekistan? Well, that's just it. It's the nationality. It's because he's Armenian that he is being singled out. Armenians are a very small minority in Uzbekistan, and this is a group that is persecuted. The fact that he appears Armenian, the fact that he has an Armenian last name, is why he is being persecuted. It's not any one act. He didn't commit any crime. He didn't get anybody angry in authority. He's Armenian, and Armenians are persecuted in Uzbekistan, and that's just the way it will be forever. If it pleases the Court, I'd like to use the rest of my time for rebuttal. You may. Thank you. Ms. Arnold? Yes. May it please the Court, my name is Lisa Arnold. I'm here today representing the respondent in this matter, the Attorney General of the United States. The only issue before the Court is whether the immigration judge's decision in this case, denying the petitioner's applications for asylum and withholding of removal, are supported by substantial evidence. The government's position is that it's supported by more than substantial evidence in the record, and the petitioners have come nowhere near satisfying the very high standard they must. What have you got? Pardon me? Well, it looks as though the level of mistreatment is probably enough to qualify as persecution. What have you got to show it's not on a protected ground or the rebuttable presumption is rebutted? Well, Your Honor, as Judge Kleinfeld, I'm not certain who I'm speaking with now, but as Judge Kleinfeld noted in his questioning of Petitioner's Counsel, the actions of the petitioners themselves belie any conclusion that they fear persecution in Uzbekistan. They lived there for a period of 10 years, which was punctuated by isolated incidents of mistreatment, some of which involved no governmental interest or involvement. However, they returned to that country from numerous foreign countries, including the United States, on numerous occasions to further their business objectives, to care for their health needs, to check in on their children who they left behind when they left that country to travel to the United States. They lived relatively peacefully, as the immigration judge found in her decision, in this country for upwards of 10 years. And Mr. Segal just indicated that they were persecuted in Uzbekistan because they're Armenian, and that therefore every Armenian in Uzbekistan is entitled to refugee status. Obviously, that is not the standard for establishing asylum eligibility. Are the children still there? I thought all the family was gone except the sister. The sister and her husband, the record indicates, still live there in peace, and they run a productive and successful winery in Tashkent. The children, and the record at this point is upwards of 3 years old, but the record indicates that at the time of their hearing, the children had been left behind in Moscow with the grandparents. But they were left behind when the couple originally traveled to the United States in 1999 with the sister in Tashkent, as well as Mr. Arunatunian's mother was left there, too. And they were visited again by their parents when their parents left the United States to travel back in 2000 to attend to his medical needs and one to attend to a son's emotional condition that had arisen. Well, are you arguing that it's not enough that Armenians are persecuted in Uzbekistan, or are you arguing that there is evidence that he was not really persecuted on account of his Armenian ethnicity? Your Honor, I would argue both. First and foremost, the immigration judge correctly concluded that the acts to which Mr. and Ms. Arunatunian were subjected simply, although unfortunate and certainly harassing and arguably mistreatment, did not rise to the severe level of persecution. Persecution, as defined by the Ninth Circuit and many other circuits, is not every act of harm or disparagement that our society may consider offensive. It requires much more than that. And the IJ, after analyzing in a 20-page written decision every single incident the Arunatunians testified to, found that, although unfortunate, they simply did not rise to the level of persecution. What about stealing his store because he's an Armenian? That sounds pretty solid. Well, Your Honor, no, I would contend that the record does not support that the reason behind the revocation of his commercial lease had anything to do with his Armenian ethnicity. In fact, the fact that the landlord originally leased the commercial property to him for a four-year period defies any conclusion that he was a racist. It seems as if the revocation of the lease occurred after Mr. Arunatunian was imprisoned and ultimately convicted on a guilty plea of having used that premises to deal in illicit currency, American currency, which was against the law in Uzbekistan at the time. So the government would argue, and the IJ found, that there is no record evidence to support that the revocation of his commercial leasehold had anything to do with his ethnicity. And, in fact, the fact that he originally was able to obtain that leasehold in the first instance belies any conclusion that there was an Armenian, anti-Armenian hostility that was pervasive in the business community. The record also demonstrates that Mr. Arunatunian traveled upwards of seven times back and forth between Uzbekistan and Germany to procure merchandise that they subsequently shipped back into Uzbekistan and sold at a general open public market kiosk, once again defying any contention that they were precluded from conducting business or harassed to such an extreme level that they were unable to support their family or live productively in Uzbekistan. So the government would contend that not only did the isolated instances of mistreatment that they were subjected to do not rise to the level of persecution, but, more importantly, even if they were found to have, there is no connection between what happened to them and their race or their adverse political opinion. And, certainly, their own actions defy any conclusion that their claims to fear returning there today are well founded. In response to the current country conditions which were raised during Petitioner's argument, I have reviewed the most recent Human Rights Practices Report for Uzbekistan that covers the calendar year 2005, and which was issued in March of this year. Certainly, as everyone could probably agree, the human rights situation there is not ideal. However, I could find very little in the report that indicates Armenians, in particular, are singled out for disproportionately severe treatment. In fact, it looks as if the folks currently suffering in that country the most are extremist Muslim groups, and extremism is defined by the government there. So it seems to me that any claims to be well founded, well-foundedly fearful of returning, are certainly not substantiated by the record. And I would just like to reiterate that the standard that's applicable here is a compelling evidence standard. The Aruti unions cannot simply come forward and say there's a difference of opinion as to a reasonable conclusion be drawn from the evidence. They must show that the evidence they presented compels the opposite conclusion from that one, which the IJ reached in this case. Certainly, it's the government's position they've come nowhere near satisfying that fairly high standard, and as a result, this court must affirm the immigration judge's decision. There was no adverse credibility finding, I take it? No, Your Honor, there was not. Certainly, there are cases that indicate that credible testimony, standing alone in some circumstances, can satisfy an alien's burden of proof without more in the way of corroboration. However, Counsel, pardon me, this is Judge Baer. It's not only that there was no adverse credibility finding, it's that the IJ said, quote, he was found to be credible, so there was a favorable credibility finding, correct? Yes, Your Honor. There was no indication in the immigration judge's opinion that the things to which he testified were untruthful. She simply found, and the government is simply asserting now, that the evidence presented didn't satisfy their burden of proving their statutory eligibility for the relief which they sought, not that they were untruthful in the manner in which they testified. One can be found credible and still be found not to have satisfied their burden of proving they're entitled to the relief they seek, and that is exactly what the immigration judge found in this case. If there are no further questions of me, I would simply like to conclude my time by reiterating that the petitioners needed to demonstrate by compelling evidence that they satisfied their standard here, and they simply have not done so. As a result, this court must affirm the immigration judge's decision and dismiss the petition for review. Thank you. Thank you. Hugo, you have about a minute left. Thank you, Your Honor. Under the substantial evidence standard, there can be no other conclusion than to compel the overturning of the judge's decision. Wait a minute, counsel. The Armenian ground for discriminating against Rafael, the man, comes out only with his landlord with the statement that the motive was that I was an Armenian. Why is that the government? It was the landlord who instigated his arrest. It was also the treatment that he received in custody was as a result of his Armenian heritage. Every time there was an incident, the people who were persecuting would tell him that you're Armenian. They would use racial slurs. He testified truthfully that this was because he was Armenian. He was the only one there. Unfortunately, we can't testify because we weren't there. And if the judge found him credible and he says that it was because I'm Armenian, then we have no other choice but to believe him. If the police arrest somebody for a crime and he is, in fact, guilty of the crime and they know that he's guilty, the evidence is good, he really committed the crime, in the course of the arrest, they call him nasty names referring to his ethnicity. Is that persecution by reason of his ethnicity? During the course of the arrest, the guards or the police officers set him up to be raped. When they beat him, more so than they would if they beat him because he's Armenian, then that becomes persecution based on his nationality. It's not the fact of the arrest. It's the treatment during the arrest that gives rise to persecution. Let me ask you this. What is the evidence that compels the conclusion that he was originally arrested because of his ethnicity? The truthful testimony of the petitioner coupled with a plethora of country conditions information submitted by both sides in this case that say that Armenians are part of a persecuted group. So he testified that he didn't engage in any of these illegal acts? It's unclear from the record. He claims that he was set up and there might have been one transaction, but what he was charged with was totally trumped up charges. It was basically the landlord wanted the property. He was Uzbek, the petitioner was Armenian. He went to the police, they listened to the Uzbek, and they did whatever they wanted to because the Armenian had no say. Okay. Thank you. Thank you, Your Honor. Thank you for your time. Thank you very much.
judges: Schroeder, Klwinfeld, Bea